IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CR-473-E |
| | § | |
| DANIEL R. CANCHOLA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Sealed Opposed Motion to Dismiss. (Doc. 158). The Court has reviewed the motion, response, reply, applicable law, record, and conducted a hearing on the matter on June 6, 2022. The Court ruled at the hearing that the motion should be and hereby is DENIED. (Doc. 179). The Court explains its reasoning in more detail below:

### I. Background Facts

The Government alleges that Defendant Dr. Daniel R. Canchola "accepted bribes to sign prescriptions for orthotic braces or durable medical equipment and tests that patients did not need and without, seeing, speaking to, or otherwise treating patients, all while knowing that those braces and tests could be billed to Medicare." (Doc. 164 citing Doc. 35). Defendant has been under indictment since September of 2019. (Doc. 1). Nearly two months later, the Court declared this case complex and set the trial for March 30, 2020. (Doc. 24). Despite the original trial date, the Court has previously granted four continuances all at the Defendant's request, typically stemming from the Government producing large amounts of information within a month or two of trial. *See, e.g.*, Doc. 43. Rather than requesting a continuance to deal with the Government's most recent

large production of evidence, Defendant argues that this production, one which Defense counsel claims contains potential exculpatory evidence, warrants dismissal with prejudice.

The Court has considered the record in its entirety, but the two most recent disclosures warrant the Court's closest scrutiny. The first of the two disclosures warranting special attention is Production 35. Defendant estimates Production 35 contained more than 215 hours' worth of audio recordings. Defendant also argues some of those recordings show that other individuals had access to the Defendant's signature, which if true, would undermine the Government's claim he is responsible for signing off on requests for medical devices that his patients did not actually require. Both sides agree that a different U.S. Attorney's office obtained these recordings in 2020. Yet, the prosecutors in this case obtained and disclosed the recordings to Defendant on April 28, 2022, six days before the most recent deadline to disclose such information and thirty-nine days before trial. The second disclosure is Production 36, an expert report of a forensic psychologist who examined the Defendant. The evidence suggests the Psychologist prepared the report on May 18, 2022—the same day the Government disclosed it to the Defendant—yet fourteen days after the deadline for discovery. These two disclosures formed the backbone of Defendant's motion to dismiss.

## II.  Legal Standard

"Under the familiar *Brady* standard, the government violates a defendant's due process rights if it withholds evidence that is favorable to the accused and material to the defendant's guilt or punishment." *United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). However, "[u]nder [Fifth Circuit] case law, evidence that is turned over to the defense *during* trial, let alone *before* trial, has

never been considered suppressed." *Id.* (citing *Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008)). Instead, when a defendant challenges the production of potential *Brady* evidence turned over to him before trial, the analysis "turns on whether the defendant was prejudiced by the tardy disclosure." *Id.* (quoting *United States v. Morrison*, 833 F. 3d 491, 508 (5th Cir. 2016)). "If the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been." *Id.* (citing *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir. 1985)).

### III. Analysis

The Court begins by highlighting that all of the Government's productions have occurred *before* trial. Thus, the Court does not consider them suppressed for *Brady* purposes. *See Swenson*, 894 F.3d at 683. Instead, the Court considers these disclosures in accordance with the "tardy disclosure" analysis described in *Swenson*, *Morrison*, and *McKinney*. In light of Fifth Circuit precedent, the Courts holds: 1) the Government's discovery violation does not warrant a sanction; 2) the Government's disclosure of evidence contained in Production 35 warrants a continuance of the trial date; and 3) the Defendant's speedy trial right has not been violated.

### a. The Government's discovery violation does not warrant sanctions.

"A district court commands 'broad discretion' when deciding whether to impose sanctions for discovery violations." *Swenson*, 894 F.3d at 684 (citing *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000)). But, before employing sanctions, the Court must carefully weigh several factors. *Id.* Specifically, it must consider: "1) the reasons why disclosure was not made; 2) the amount of prejudice to the opposing party; 3) the feasibility of curing such prejudice with a continuance of the trial; and 4) any other relevant circumstances." *Id.* If the district court decides

to sanction a party, it "should impose the least severe sanction that will accomplish the desired result—prompt and full compliance with the court's discovery orders." *Id.* (quoting *United States v. Sarcinelli*, 667 F.2d 5, 7 (5th Cir. 1982)).

The Government tendered Production 35 before the Court's May 4, 2022, deadline to produce such evidence. (Doc. 133). Accordingly, Production 35 does not constitute a discovery violation. However, the Government disclosed its most recent production, Production 36, on May 18, 2022. (Doc. 178-1). The Government made this disclosure fourteen days after the Court ordered May 4, 2022, deadline to disclose such evidence. *Id.* The disclosure contained evidence already disclosed before the May 4, 2022, deadline—but it also contained an expert report from the Government's forensic psychologist dated after the deadline. This portion of the disclosure is late in accordance with the Court's most recent scheduling order. (Doc. 133). The Court considers the *Garrett* factors when deciding to impose sanctions for discovery violations.

None of the factors weigh in favor of sanctioning the Government. First, the Government's reason for turning over the expert report late is that the expert finalized and submitted the report on May 18, 2022—the same day the Government turned it over to the Defendant. The evidence shows the Government turned the report over as soon as it obtained the report. Second, Defendant failed to demonstrate that he was actually prejudiced by receiving this material at the time he received it—i.e., he does not argue that he is unable to make effective use of the affidavit at trial. The prejudice Defendant claims from this part of the disclosure is simply that the tardiness cut into his time to prepare for trial—bringing the Court to the third factor. This general prejudice to the Defendant can be cured with a two-month continuance. Fourth and finally, the Court considers all other relevant factors as part of its decision. No other relevant factor in any combination with the

first three factors warrants a sanction for the disclosure of the expert report past the Court's May 4, 2022, deadline.  As a result, a sanction is not appropriate at this time.

    b.  The Government's disclosure of Production 35 warrants a continuance of the trial date rather than dismissal of the case with prejudice.

The Fifth Circuit "has stressed that 'even in the case of the most egregious prosecutorial misconduct, an indictment may be dismissed only upon a showing of actual prejudice to the accused.'" *Swenson*, 894 F.3d at 684 (quoting *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir. 1982)). As the Court noted above, the Government technically produced Production 35 in advance of the Court's May 4, 2022, deadline to produce *Brady* evidence and June 6, 2022, trial date. On its face, the Court cannot consider this disclosure tardy with respect to the scheduling order, let alone suppressed for *Brady* purposes. Defendant argues it is tardy because the audio recordings were generated two years prior to the Government turning it over to the Defendant. Thus, Defendant must make a showing of actual prejudice before the Court can dismiss his indictment with prejudice.

The Court considered the Defendant's briefing and conducted a hearing on the matter lasting four hours and twenty-eight minutes of in Court time. Throughout his briefing and the hearing, Defendant failed to make a showing of actual prejudice. Moreover, the facts of *Swenson* are so similar to the instant case that this Court will follow the Fifth Circuit's suggested outcome and order a continuance.

        i.   Defendant's briefing and arguments at the hearing fail to show actual prejudice.

Defendant's motion to dismiss the indictment with prejudice breaks his argument down to two parts: the first section is titled "Government's conduct constitutes unequivocal *Brady*

violations" and the second is titled "no adequate remedy short of dismissal exists". (Doc. 158, at 9). Both contentions here fail for the following reasons:

>A.  The Government's conduct does not constitute *Brady* violations.

Defendant supports this *Brady* violation claim by arguing: 1) the Government "withheld material exculpatory evidence for periods exceeding one year or more"; 2) "[t]he circumstances surrounding the violations at issue reveal that the Government was not merely negligent, but acted with deliberate indifference"; 3) "the Government cannot disclaim responsibility by merely claiming not to have been aware of evidence within its possession"; 4) "the suppression of material exculpatory evidence violates *Brady*, irrespective of any good faith or inadvertence on the part of the Government"; and 5) "as a result of the Government's Brady violations, the Defendant has further suffered a violation of his Right to Due Process". (Doc. 158, at 2). These arguments are insufficient to support a showing of actual prejudice.

The biggest issue for the Defendant here is that his briefing fails to consider how significantly *Swenson* undermines his argument. In fact, his briefing fails to mention *Swenson* at all. Although the Court has already referenced much of the legal landscape outlined by the Fifth Circuit in *Swenson*, it will show which parts of *Swenson* rebuts which parts of Defendant's argument.

To Defendant's first, fourth, and fifth point, the Fifth Circuit all but closed off these arguments to district courts. "Under [Fifth Circuit] case law, evidence that is turned over to the defense *during* trial, let alone *before* trial, has never been considered suppressed." *Swenson*, 894 F.3d at 684 (citation omitted). If the Fifth Circuit has never considered evidence turned over before trial suppressed for *Brady* purposes, this Court hesitates to do so. Turning to the facts of this case, the Government turned the *Brady* evidence over to Defendant nearly six weeks before trial.

Defendant's counsel estimates that the disclosure consists of potentially more than 215 hours-worth of audio recordings. (Doc. 158, at 5). Defendant fails to point the Court to any precedent holding 215 hours-worth of disclosures turned over six weeks before trial is considered suppressed for *Brady* purposes. The Court declines to declare it as such. Therefore, these subsections fail to support a finding of actual prejudice.

To the Defendant's second and third point, the Fifth Circuit emphasized that the Prosecutor's alleged misconduct is not the focus of the inquiry for dismissing an indictment with prejudice. *See Swenson*, 894 F.3d at 684 (citation omitted) ("even in the case of the most egregious prosecutorial misconduct, an indictment may be dismissed only upon a showing of actual prejudice to the accused."). Defendant's explanation of why he believes the Government acted inappropriately does not move him any closer to obtaining a dismissal of the indictment with prejudice. Defendant must show how he suffered actual prejudice from the alleged misconduct. Instead, he argues that such alleged misconduct, whether reckless or inadvertent, would not excuse a *Brady* violation. While that point may be true for a *Brady* analysis, it has no bearing on the actual prejudice analysis. Therefore, these subsections fail to support a finding of actual prejudice.

B. An adequate remedy short of dismissal does exist—granting a continuance.

The Defendant throughout his brief claims he is stuck with an "intolerable Hobson's Choice that he has been faced with as a result of the Government's discovery violations." *E.g.* (Doc. 158, at 30). He further reiterated this point at the hearing. (Doc. 181, at 76). Defendant argues the large production nearly six weeks prior to trial left him with two choices that both implicated waiving a constitutional right: 1) seek a continuance thereby waiving his speedy trial right; or 2) proceed to trial without fully reviewing the evidence thereby waiving his right to

effective assistance of counsel. *Id.* This argument is unpersuasive because it is untimely, speculative, and presents a false choice to the Court.

First, Defendant's untimeliness in making this argument renders it less persuasive. Defendant raises this argument for the first time on the Government's fifth instance of producing large amounts of evidence close to but before trial. Defendant asked for continuances each of the four times and never before described the situation as an "intolerable Hobson's Choice." (Doc. 158, at 30). Defendant's choice to describe it that way now makes it less persuasive than if he had made this point the first time the issue arose.

Second, Defendant fails to prove that the two choices he presents would cause him to lose one of his constitutional rights. Regarding the choice of a continuance, Defendant fails to support his claim that requesting a fifth continuance would be the deciding factor in waiving his constitutional right to a speedy trial. As the Court will explain in more detail below in the speedy trial right analysis section of this opinion, this point is key under Fifth Circuit precedent because Defendant never invoked his speedy trial right until this motion. The cases Defendant analogizes to are also unhelpful.

Defendant points the Court to an Eighth Circuit case and a California Central District Court decision to show why the speedy trial right issue requires dismissal of his indictment with prejudice. (Doc. 158, at 28-29) (citing *United States v. Davis*, 244 F.3d 666, 670 (8th Cir. 2001); *United States v. Govey*, 284 F. Supp. 3d 1054, 1061 (C.D. Cal. 2018)). These cases do not support Defendant's argument that this indictment should be dismissed with prejudice.

Regarding the *Davis* case, Defendant argues that "the Eighth Circuit upheld the dismissal of an indictment where 'government not only produced the DNA evidence a month late, but it did so almost literally on the eve of trial, making it virtually impossible, absent a continuance, for defendants to evaluate and confront the evidence against them.'" (Doc. 158 at 29) (quoting *Davis*, 244 F.3d at 671). The government in that case produced its evidence on Friday when the trial was set for the following Monday. Whereas in our case the production was made six weeks in advance of trial. The *Davis* posture is different from this case. However, that difference, while important, is far less so than Defendant's misread of what the district court did in response to the government's actions.

The district court in *Davis* did *not* dismiss the indictment with prejudice as Defendant asserts—the district court opted for the lesser sanction of suppressing the late filed evidence. *See Davis*, 244 F.3d at 672 ("the district court considered whether it could remedy the prejudice by granting a less severe sanction than *exclusion of the evidence*, that is, a continuance in order to allow defendants time to review and rebut the DNA evidence.") (emphasis added). This distinction is important, not only because *Davis* fails to support Defendant's claim, but also because it undermines his contention that "no adequate remedy short of dismissal exists." (Doc. 158, at 20). Suppressing the late evidence is a lesser sanction than dismissing an indictment with prejudice. *See, e.g.*, *id.*

The Eighth Circuit also noted it was a close question whether to affirm the district court's decision to suppress the evidence rather than granting a continuance. *See id.* at 671 ("the government argues that the district court abused its discretion in imposing the severe sanction of excluding evidence rather than granting a continuance. This is a closer question, but we also

conclude that the district court did not abuse its discretion in excluding the DNA evidence as a discovery sanction."). And the district court chose suppression over a continuance *because*

> granting a continuance would have ignored significant scheduling problems. Because of the government's last-minute production of the DNA evidence, it was too late to reschedule for trial other previously continued criminal cases, which would have left the district court with a very crowded criminal docket but no criminal case ready for trial.

*Id.* at 672. This Court, while incredibly busy, is not currently faced with the issue of a crowded criminal trial docket. Thus, this Court is not forced to choose between suppressing evidence and continuance the way the *Davis* district court was forced to choose. In any event, there is no evidence the *Davis* district court considered dismissal of the indictment with prejudice the way Defendant demands of this Court.

Next, *Govey* is also unhelpful to this Court as it is factually distinguishable from this case in several ways. In *Govey*, the district court moved the trial date twice at the government's request and over defendant's objection to accommodate government's preparation of its case. Critically, at the government's first request to move the trial date, the *Govey* defendant "objected to any continuance and expressed a strong desire to promptly resolve the charges against him." *Govey*, 284 F. Supp. at 1059. The second time the government requested a continuance to deal with evidence it acquired right before trial, "[d]efendant filed an opposition and a motion to dismiss the case for the [g]overnment's failure to comply with its discovery obligations. Defendant argued that any continuance would have a prejudicial effect as he remained in custody pending the trial." *Id.* at 1060. Even still, "[o]ver [d]efendant's objection, the Court again granted the [g]overnment's motion and continued the trial" while noting its concern about the government's practice. *Id.* Despite the district court granting the second continuance so that the government could gather the

evidence, "the [g]overnment apparently had waited until the eve of trial before it even started requesting materials from the OCSD, the District Attorney's office, and the DOJ." *Id.* Then, the government in *Govey* waited until five days before the newest trial date to ask the Court to review "voluminous materials to determine whether any privilege existed" and subsequently produced 100,000 documents to the *Govey* defendant one week before the newest trial date—the *Govey* defendant renewed his motion to dismiss the charges. *Id.* The Court granted this renewed motion. *Id.* at 1064.

Unlike *Govey*, Defendant requested every continuance, not the Government. Unlike *Govey*, Defendant has never before objected to any continuance of the trial date or previously motioned the Court to dismiss the indictment with prejudice. Unlike *Govey*, Defendant is only on his first motion to dismiss the indictment with prejudice whereas the *Govey* defendant had his first motion to dismiss denied before his second was granted. Unlike *Govey*, Defendant is not prejudiced by pretrial incarceration. *See* (Doc. 12) (ordering the Defendant released from pretrial custody). Moreover, the Court has no indication that the prosecutors in this case have been as careless as the prosecutors in *Govey*. Finally, this Court does not have the benefit of the Ninth Circuit's appellate analysis of *Govey*. *See United States v. Govey*, No. 18-500098, 2018 U.S. App. LEXIS 37438, 2018 WL 7822092 (9th Cir. Nov. 19, 2018) ("Appellant's motion for voluntary dismissal of this appeal is granted. This appeal is dismissed."). This Court's opinion should not be construed as a commentary on whether *Govey* was correctly decided—it is enough here that *Govey* does not benefit Defendant's argument.

Regarding the choice of proceeding to trial without fully reviewing the audio recordings, such a decision would not be ineffective assistance of counsel *per se*. Instead, "[s]trategic choices

made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support limitations on investigation." *Strickland v. Washington*, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The motion itself shows Defendant's counsel received the evidence on April 28 when trial was set for June 6. (Doc. 158, at 5). While Defendant does not specify exactly how much of the recently filed evidence his counsel reviewed, the motion suggests Defendant's counsel reviewed at least some portion of the recently disclosed evidence by May 11. Defendant's counsel still had roughly three weeks to go before trial. (Doc. 158, at 5). Defendant claims his counsel could not review all the evidence before trial in that remaining time. But reviewing all that evidence may not be required to meet the *Strickland* standard.

The Court would have to speculate about how much of the evidence Defendant's counsel already reviewed and how much more Defendant's counsel could review before trial to determine whether that hypothetical amount would fall below the standard for effective assistance of counsel. The Court declines to engage in that kind of speculation. *See Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009) (quoting *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000)) ("We must be particularly wary of arguments that essentially come down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second guessing."); *see also Murphy v. Davis*, No. 3:10-CV-163-N, 2017 U.S. Dist. LEXIS 8688, 2017 WL 291171, at *13 (N.D. Tex. Jan. 23, 2017) (quotations omitted) ("Murphy's claim also comes down to a matter of degrees, relying upon precisely the sort of judicial second-guessing that *Strickland* was intended to avoid, particularly in light of counsel's task to balance limited resources in accord with effective trial tactics and strategies.").

Moreover, the Court's research into this issue reveals that it may be prudent for an attorney to request a continuance in this kind of situation. *See Hughes v. Vannoy*, 7 F.4th 380, 389 (5th Cir. 2021) ("[A] reasonable attorney learning of new and potentially damning testimony on the eve of trial would have moved for a continuance or at least attempted to try to investigate the new testimony in whatever limited time was available."). *Hughes* further supports a continuance as the best course of action.

Third, Defendant presents a false choice to the Court. Even assuming that the two options Defendant describes would lead to sacrificing a constitutional right, Defendant had other options. Federal Rules of Criminal Procedure 16(d)(1) states: "at any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or *grant other appropriate relief*." For example, suppressing evidence, while "rare" and "draconian," is an available lesser remedy the Court could consider. *See United States v. Michalik*, 5 F.4th 583, 591 (5th Cir. 2003) (quotation omitted) ("where a party did not act with 'an improper motive, it is rare to sanction a party in a method as draconian as suppressing the evidence.'"). Another potential remedy Defendant could have requested was a motion to compel the Government to screen through the recordings to find *Brady* evidence. The Court need not list all of Defendant's options. It is enough to prove this point that other remedies were available to Defendant aside from the two he presented. Now that the Court has determined Defendant failed the show actual prejudice required to have the indictment dismissed with prejudice, the Court looks to Fifth Circuit precedent to determine the best course of action for the situation at hand.

          ii.      Because the facts of *Swenson* are so similar to this case, the Court will follow the Fifth Circuit's suggested outcome and order a continuance.

The facts of this case mirror the facts of *Swenson* in at least four important ways: 1) the *Swenson* case was three years old at the time of the tardy disclosure; 2) Swenson was not confined; 3) Swenson had four continuances prior to the tardy disclosure; and 4) Swenson failed to show how he would be unable to make use of the evidence at trial. *Swenson*, 894 F.3d at 684. Whereas: 1) the instant case is three years old; 2) Defendant is not confined; 3) Defendant obtained four continuances prior to the Government's disclosure of Production 35 and 36; and 4) Defendant has not explained in his briefing or at the hearing how he is unable to make effective use of the evidence at trial. The Fifth Circuit in *Swenson* held that a continuance would have been the appropriate remedy rather than dismissal with prejudice. *Id.* Because of the similarities between *Swenson* and the instant case, the Court must follow *Swenson* unless there is some distinguishing factor.

The Fifth Circuit in *Swenson* did note that a case may present facts that could warrant dismissal with prejudice—this case is not the one. While the Court is concerned that the Government did not produce the audio recordings in Production 35 to Defendant until two years after the recordings were created, the Court finds that the reason for the delay does not reach the "abhorrent level" contemplated by the Fifth Circuit in *Swenson.* 894 F.3d at 685 (citing *United States v. Fulmer*, 722 F.2d 1192, 1196 (5th Cir. 1983)). The key distinguishing factor between this case and *Swenson* is that the Defendant alleges a continuance would violate his Sixth Amendment right to a speedy trial. (Doc. 158, at 20). That issue was not before the Fifth Circuit in *Swenson.* Accordingly, the Court must conduct a speedy trial right analysis.

      c.  Defendant's speedy trial right has not yet been violated.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "To determine whether a defendant's constitutional right to speedy trial has been violated, this court [] balances four factors:

1) the length of delay; 2) the reason for delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant." *United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)). "If the first three factors weigh heavily in the defendant's favor, prejudice may be presumed. If they do not, the defendant 'must demonstrate actual prejudice.'" *Id.* (quoting *United States v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007)). Additionally, the Fifth Circuit has held delays of longer than five years are entitled to a presumption of prejudice, but "delays of less than five years are not enough, by duration alone, to presume prejudice." *Id.* (quoting *Parker*, 505 F.3d at 328–29).

The original indictment was returned on September 18, 2019. (Doc. 1). The trial date was set to take place June 6, 2022. (Doc. 133). As of the date of this opinion, this case has reached the two year and eleven-month mark between indictment and now. The delay is less than the five-year mark required for the presumption of prejudice. And so, prejudice cannot be presumed on that basis. Instead, the Court must undertake a full analysis of the first three *Barker* factors to determine whether prejudice will be presumed. *See id.*

      i.     Length of delay does not weigh heavily in favor of the Defendant.

The Fifth Circuit has previously held in cases taking longer than three years between indictment and trial, the first factor does not weigh heavily in favor of the defendant. *See id.*; *see also United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) ("the delay between indictment and trial was, at most, only three years and nine months . . . . Accordingly, the length of delay factor of the *Barker* balancing test does not weigh heavily in Serna's favor."). Moreover, the length of delay is considered more tolerable in complex cases. *See United States v. Scully*, 951 F.3d 656, 669 (5th Cir. 2020) (citing *Barker*, 407 U.S. at 531). The complex nature of a case can even lead to this factor being weighed against the defendant. *See United States v. Simpson*, No.

3:09-CR-249-D, 2010 U.S. Dist. LEXIS 113600, 2010 WL 4340683, at *5 (N.D. Tex. Oct. 26, 2010).  As the Court noted above, this case has yet to reach the three-year mark since indictment and the Court declared this case complex. (Doc. 24). Therefore, this factor does not weigh heavily in favor of the Defendant.

    ii.  Reason for delay does not weigh heavily in favor of Defendant.

  Here, the Court asks "whether the government or the criminal defendant is more to blame." *United States v. Duran-Gomez*, 984 F.3d 366, 374 (5th Cir. 2020) (quoting *Vermont v. Brillon*, 556 U.S. 81, 90, 129 S. Ct. 1283, 173 L. Ed. 2d 231 (2009)). Defendant concedes that he requested every continuance in this case. (Doc. 158 at 23). Typically, defendants who request every continuance "will not be heard to complain of a lapse of time attributable to continuances he sought and received from the trial court." *Id.* (quoting *Nelson v. Hargett*, 989 F.2d 847, 852 (5th Cir. 1993)). Defendant attempts to avoid this rule by arguing he made the requests due to the Government's "suppression" of evidence. (Doc. 158 at 23). As the Court noted above, Defendant's use of the term suppression is conclusory. *See Swenson*, 894 F.3d at 683.

  While the Government in this case does have a record of turning over large amounts of information close to the deadlines to disclose evidence, there is no evidence that the Government has been doing so in bad faith. *See Scully*, 951 F.3d at 670. Furthermore, there is no evidence that the Government has been negligent in its production either. The record indicates they turned over the large amount of evidence in Production 35 "out of an abundance of caution." (Doc. 164 at 7). Ultimately, there is no evidence in the record to suggest that the timing of Government's disclosure of Production 35 was in bad faith or an attempt to gain an impermissible advantage at trial. *See United States v. Bishop*, 629 F.3d 462, 467 (5th Cir. 2010) (holding there was no clear error where

the district court found no evidence that the Government's post-indictment delay was bad faith or a tactical maneuver to gain litigation advantages). Accordingly, this factor does not weigh heavily in favor of the Defendant.

<ol type="i" start="3">
<li><strong>Defendant's previous failures to assert his speedy trial right weighs against him.</strong></li>
</ol>

"An assertion of the right to a speedy trial is a 'demand for a speedy trial.' This assertion will 'generally be an objection to a continuance or a motion asking to go to trial.'" *Duran-Gomez*, 984 F.3d at 378 (quoting *United States v. Frye*, 489 F.3d 201, 211 (5th Cir. 2007)). "At the very least, a defendant should manifest his desire to be tried promptly." *Id.* (internal quotations omitted). "If a defendant waits too long to assert his right, his silence will be weighed against him." *Id.* (quoting *Parker*, 505 F.3d at 329–30).

Defendant concedes that he has not explicitly invoked his speedy trial right at any point until his motion to dismiss the indictment with prejudice. (Doc. 158 at 26). He instead argues that the brief continuance in his fourth motion for continuance, (Doc. 106), indicated his intention to be tried promptly. (Doc. 158 at 24). The Court cannot draw that inference because Defendant gave a reason for the delay— and his reason was wholly unrelated to his desire to be tried promptly. (Doc. 106 at 3) ("[W]ith respect to the requested fourteen (14) day length of continuance, the Defendant would respectfully submit that this represents a minimally necessary period of time to allow for adequate review of the recently received productions, yet simultaneously keep the resulting disruption to the Court's and Government's schedules as minimal as possible."). The Court, therefore, finds that prior to this motion to dismiss the indictment, Defendant has failed to diligently pursue his speedy trial right. *See United States v. Sung Won*, No. 3:16-CR-516, 2018 U.S. Dist. LEXIS 217777, 2018 WL 6840095, at *6 (N.D. Tex. Dec. 28, 2018) (holding this factor

weighed against the defendant where he failed to diligently pursue speedy trial right); *see also United States v. Rivers*, No. 3:17-CR-460-D, 2018 U.S. Dist. LEXIS 123289, 2018 WL 3549697, at *4 (N.D. Tex. July 24, 2018).

As the Fifth Circuit noted, "[a] motion to dismiss the indictment, particularly when, as here, it is filed over two years after the indictment, is not evidence of [a desire to be tried promptly]." *Harris*, 566 F.3d at 432 (holding this factor weighed against the defendant). Moreover, this Court has previously found this factor weighs against a defendant when he waits years to assert his speedy trial right and does so for the first time in a motion to dismiss based on the violation of that right. *See Davis v. United States*, No. 3:07-CV-1995-P, 2009 U.S. Dist. LEXIS 100824, at *28 (N.D. Tex. Oct. 28, 2009). Other district courts in this circuit have found that when a Defendant fails to request a speedy trial or object to continuances, this third factor will weigh heavily against him. *See Spencer v. Dir.*, 2022 U.S. Dist. LEXIS 39827, (E.D. Tex. Feb. 3, 2022) (*rec' adopted*) ("In this case, the petitioner did not request a speedy trial or object to the continuances. Therefore, the third factor weighs heavily against the petitioner."); *United States v. Garza*, No. 11-CR-3021-KC, 2012 U.S. Dist. LEXIS 8185, 2012 WL 209055, at *11 (W.D. Tex. Jan. 24, 2012); *United States v. Escamilla*, 244 F. Supp. 2d 760, 768 (S.D. Tex., 2003). Accordingly, the Court finds that this factor weighs against the Defendant.

### iv.    Defendant failed to show actual prejudice.

"Because the first three factors do not weigh heavily in [Defendant's] favor, [Defendant] is not entitled to a presumption of prejudice." *Harris*, 566 F.3d at 433. Defendant must therefore "demonstrate 'actual prejudice' that outweighs the other factors." *Id.* (quoting *Frye*, 489 F.3d at 209). "Actual prejudice is assessed in light of the three following interests of the defendant: (1) to

prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Id.* (quoting *Barker*, 407 U.S. at 532).

Defendant, in his brief in support of his motion to dismiss the indictment, failed to analyze the issue of actual prejudice. (Doc. 158 at 27). He instead assumed the Court would presume it based on his analysis of the other three factors. But as the Court explained above, Defendant is not entitled to such a presumption. A search through his reply in support of his motion to dismiss reveals that he analyzed only one of the actual prejudice factors—impairment of his defense. (Doc. 168). Defendant maintains throughout his briefing and the hearing that the prejudice is being forced to choose between one constitutional right, speedy trial, and another, his right to effective assistance of counsel. *See, e.g.*, Doc. 181, at 19. That view of actual prejudice assumes his speedy trial right has already been or will be violated rather than proving it under the *Barker* test. It is therefore unpersuasive. Moreover, the Court finds that the three interests that the Court must consider for actual prejudice weigh against such a finding.

First, Defendant was ordered released from pre-trial incarceration on September 30, 2019. (Doc. 12). Thus, because Defendant is not incarcerated pretrial, the first interest weighs against him. *See United States v. Griggs*, No. 3:20-CR-00087-N-1, 2021 U.S. Dist. LEXIS 195954, 2021 WL 4748589, at *5 (N.D. Tex. Oct. 12, 2021) (holding this factor weighed against Defendant where he was not incarcerated pretrial); *Sung Won*, 2018 WL 6840095, at *6 (same).

Second, the Defendant failed to reference any particularized anxiety or concern. The Court is instead left to assume he suffers from the same general concern that comes with being under indictment. *See United States v. Avalos*, 541 F.2d 1100, 115 (5th Cir. 1976) (quoting *United States v. Shepherd*, 511 F.2d 119, 123 (5th Cir. 1975)). The second interest weighs against Defendant.

*See United States v. Newton*, No. 3:09-CR-103-D, 2010 U.S. Dist. LEXIS 20459, 2010 WL 769507, at *4 (N.D. Tex. Mar. 8, 2010) (rejecting "general assertions of anxiety and concern.").

Finally, Defendant has not shown how his Defense has been impaired to a degree that a continuance could not cure. *See, e.g.*, *Jamerson v. Estelle*, 666 F.2d 241, 245 (5th Cir. 1982) (quoting *United States v. Edwards*, 577 F.2d 883, 889 (5th Cir. 1978) ("[W]hile 'faded memory may result in prejudice, we have held that in order to prejudice the defense to the extent necessary to constitute a speedy trial violation, the faded memory must substantially relate to a material fact in issue.")). Defendant does not argue any of the witnesses' memories have been effected by the delay. Instead, Defendant argues he prepared his defense "based upon the presumption that no such recordings existed." *See* Doc. 158 at 20. This argument is a variation of the argument the Fifth Circuit rejected in *Swenson*. 894 F.3d at 684 ("Swenson argues that the delay prejudiced her because 'if she had received the documents at the beginning of the case, her preparation and strategy would have been entirely different.' She also claims she would have searched for other documents and evidence. This argument is too speculative. And a continuance of the trial would have solved most of these problems."). Therefore, the third interest weighs against the Defendant.

## IV. Conclusion

For the above reasons and those stated at the June 6, 2022, hearing, Defendant's Motion to Dismiss is DENIED.

SO ORDERED: August 25, 2022.

Ada Brown
UNITED STATES DISTRICT JUDGE